UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TATIANA VALEZCA JIMENEZ CARRION,

Plaintiff,

v.

LAURA HERMOSILLO et al.,

Defendants.

CASE NO. 2:26-cv-00694-JNW

ORDER AWARDING EAJA FEES

Petitioner Tatiana Valezca Jimenez Carrion's motion for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, comes before the Court. Dkt. No. 13. The Government opposes the motion and asks the Court to wait for the Supreme Court to decide whether EAJA applies to habeas cases challenging immigration detention. For the reasons stated below, the Court GRANTS the motion.

## 1. LEGAL STANDARD

Under EAJA, when a qualifying civil action is brought by or against the United States, "a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was

substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28 U.S.C. § 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

The Government must show that its position was "substantially justified." *Medina Tovar*, 41 F.4th at 1089. The Ninth Circuit applies a "reasonableness standard in determining whether the government's position was substantially justified." *Id.* "'Substantially justified' means 'justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id.* (quoting *Meier*, 727 F.3d at 870). When deciding whether the Government's position was reasonable, courts consider not only its position in litigation, but also the reasonableness "of the underlying agency action giving rise to the civil action." *Id.* This approach is required by EAJA's plain language, confirming the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

Under EAJA, attorney fees are limited to $125 per hour unless the court finds that a higher fee is justified. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has

found higher rates justified based on cost of living, and has approved a table of annually adjusted EAJA rates based on costs of living. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) The parties agree that the maximum rate for the work performed here is $258.46 per hour. Dkt. Nos. 13 at 6; 17 at 11.

When ruling on a motion for attorney's fees, the Court "must find the facts specially and state its conclusions of law separately." *Su v. Hernandez*, No. 2:26-cv-00765-TMC, 2026 WL 2581957, at *2 (W.D. Wash. Sept. 1, 2026) (quoting Fed. R. Civ. P. 52(a)(1)) (citing Fed. R. Civ. P. 54(d)(2)(C)).

## 2. FINDINGS OF FACT

2.1. Tatiana Valezca Jiménez Carrión is a citizen of Nicaragua who entered the United States on May 26, 2022, without being admitted or paroled after inspection by an immigration officer. Dkt. No. 7 ¶ 4. On May 30, 2022, she was personally served with a Notice to Appear ("NTA") charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled. *Id.* ¶ 5. She was released on an Order of Recognizance ("OREC"). *Id.*; Dkt. No. 8-1.

2.2. On January 10, 2023, she applied for asylum and withholding of removal. Dkt. No. 7 ¶ 8. On May 3, 2023, an Immigration Judge issued her a final removal order to Nicaragua. *Id.* ¶ 9. On October 19, 2025, she was arrested for driving under the influence. *Id.* ¶ 10. No criminal charges were filed. Dkt. No. 9 at 7.

2.3. On December 15, 2025, she appeared in Seattle Immigration Court where a judge denied her asylum application, her withholding of removal, and ordered

that she be removed to Nicaragua. Dkt. No. 7 ¶ 11. Jiménez Carrión appealed the order.

2.4. On December 18, 2025, Jiménez Carrión reported to ICE for her check-in appointment as part of her OREC reporting requirements. She was taken into custody. Dkt. No. 7 ¶ 12. She was detained at the Northwest ICE Processing Center ("NWIPC"). She received no written notice and no hearing before a neutral decisionmaker prior to her re detention.

2.5. Jiménez Carrión petitioned for a writ of habeas corpus in this Court on February 7, 2026. Dkt. No. 1. The Government argued that she was subject to mandatory detention under 8 U.S.C. § 1225(b). The Court granted the habeas petition for the reasons stated in its order, filed March 27, 2026. Dkt. No. 10. The Court ordered Jiménez Carrión's release.

2.6. Jiménez Carrión's attorneys, Rowan Laidlaw and Sam Sueoka, represented her in these habeas proceedings. Laidlaw billed 28.8 hours on this case, and Sueoka billed 4.25 hours. Dkt. No. 13-1 at 2–3. Jiménez Carrión petitioned for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").

2.7. The Court ordered the parties to submit briefing on whether the fee petition should be stayed pending the Supreme Court's decision in *Montoya Palacios v. Baker*, No. 25-4045, 2026 WL 171690 (D. Md. Jan. 22, 2026), *aff'd*, No. 26-6251, 2026 WL 1154321 (4th Cir. Mar. 24, 2026), *cert. granted* sub nom. *Montoya Palacios v. Liggins*, No. 25-1223, ___ S. Ct. ___, 2026 WL 1855057 (June 29, 2026). Dkt. No. 20. Having accepted review of that case, the Supreme Court will likely decide whether attorneys' fees are available under

EAJA for immigration habeas petitions. The Government argued that this case should be stayed pending the Supreme Court's decision, while Jiménez Carrión urged the Court to decide the motion. Dkt Nos. 21; 22.

2.8.

## 3. CONCLUSIONS OF LAW

3.1. The Court finds it has subject-matter jurisdiction to award fees under EAJA, as the Government has waived sovereign immunity. *See* 28 U.S.C. § 2412(d)(1)(A). Indeed, the Ninth Circuit has held that EAJA applies to habeas proceedings. *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009); *In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985). The Court rejects the Government's arguments to the contrary, adopting the reasoning set forth in *Tsyamba v. Hermosillo*, No. 2:25-cv-02623-GJL, 2026 WL 2874027, at *2 – 3 (W.D. Wash. Sept. 24, 2026). This Court must follow binding circuit precedent until the Ninth Circuit or the Supreme Court says otherwise

3.2. The Court next decides whether a stay is appropriate. "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). When a party requests a stay, the court must weigh certain competing interests. *Id.* "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* The party requesting a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Landis*, 299 U.S. at 255).

3.3. The Government raises the same arguments in support of a stay that it raised in *Sepulveda Ayala v. Bondi*, 2:25-cv-01063-JNW, and *G.S. v. Bostock*, No. 2:25-cv-01255-JNW. The Court rejects these arguments again, incorporating its reasoning from those cases. *See Sepulveda Ayala*, 2:25-cv-01063-JNW, Dkt. No. 33; *G.S.*, No. 2:25-cv-01255-JNW, Dkt. No. 50. In short, the Court finds that a stay will "work damage" to Jiménez Carrión in the form of lost interest on the award, improperly shifting the cost of a stay to her. And for the reasons stated in *Sepulveda Ayala* and *G.S.*, the Government has not shown "a clear case of hardship or inequity in being required to go forward." *CMAX, Inc.*, 300 F.2d at 268 (quoting *Landis*, 299 U.S. at 255); *Sepulveda Ayala*, Dkt. No. 33 at 10–11; *G.S.*, No. 25-cv-01255-JNW, Dkt. No. 50 at 5–10. Finally, a stay would not "promote economy of time and effort" for the Court or for the litigants. *CMAX, Inc.*, 300 F.2d at 268. Rather, it would simply keep this case from being finally resolved and closed.

3.4. Turning to Jiménez Carrión's EAJA fee petition. First, Jiménez Carrión is the prevailing party. 28 U.S.C. § 2412(d)(1)(A).

3.5. The Government has not met its burden of showing that ICE's position in detaining Jiménez Carrión was substantially justified.

a. First, it argues that ICE properly detained Jiménez Carrión because she violated the conditions of her OREC. Dkt. No. 17 at 7. But as the Court already found, the Government was not excused from complying with due process requirements. Dkt. No. 10 at 5. For over a year now, courts in this district have repeatedly found that meaningful notice and a pre-deprivation hearing is required before revoking immigration release and re-detention. *Espinoza Palacios v. Hermosillo*, No. 2:26-cv-491-JNW, 2026 WL 686138, at *6 n.1 (W.D. Wash. Mar. 11, 2026) (collecting cases). This is not a new rule, but rather the application of longstanding due process principles set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to a change in agency practice "that has been overwhelmingly rejected by federal courts before and since this case was resolved." *Ramirez Tesara v. Hernandez*, No. C25-1723-KKE, 2026 WL 1506097 (W.D. Wash. May 29, 2026).

b. Second, the Government argues that ICE properly detained Jiménez Carrión because she was subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. No. 17 at 8. That argument contradicts the agency's own actions and documents, which confirm that Jiménez Carrión was detained under 8 U.S.C. § 1226(a). *See* Dkt. No. 10 at 5.

c. Third, the Government argues that ICE properly detained Jiménez Carrión because an IJ had ordered her removed. Dkt. No. 17 at 8.

However, the Government acknowledges that it arrested and detained her within the appeal period, meaning the removal order was not yet administratively final. And the Government cites no precedent supporting this argument. Thus, the Court finds it unpersuasive.

3.6. Because the Government's position was not substantially justified, the Court considers whether there are any special circumstances that would make an award of fees unjust. The Court finds none.

3.7. Accordingly, the Court awards fees under EAJA.

3.8. The Government argues that the fees requested are unreasonable and should be substantially reduced or denied. Dkt. No. 17 at 8. As explained below, based on the Government's objections, the Court strikes 3.8 hours of time billed by Jiménez Carrión's attorneys, reducing the total hours billed from 33.05 to 29.25.

a. First, the Government argues that Jiménez Carrión has not demonstrated that the participation of two attorneys on her case did not produce unnecessary or duplicative work. *Id*. at 9. Jiménez Carrión responds that her attorneys' time records show only "minor overlap on tasks like reviewing the intake and habeas petition, which are reasonably conducted by both attorneys on a case to ensure each counsel is up to date and knowledgeable about the underlying facts and law of their client's situation and their argument." Dkt. No. 18 at 5. Having reviewed the time records, the Court agrees with Jiménez

Carrión and rejects the Government's characterization. The records do not reveal unnecessary duplication.

b. Next, the Government argues that a portion of the billed time consists of non-compensable administrative or clerical tasks. Dkt. No. 17 at 10. Jiménez Carrión's attorneys agree that some tasks should be stricken as purely clerical. Dkt. Nos. 18 at 6; 19. Given that agreement, the Court strikes 1.4 hours of Laidlaw's time for "ECF filing, flattening PDFs" on February 27, 2026, and .2 hours of Sueoka's time for organizing files on May 20, 2026. Dkt. No. 13-1 at 1–2.

c. The Government also moves to strike Laidlaw's time billed for organizing and scanning exhibits and coordinating language interpretation on February 26, 2026, as well as Laidlaw's time billed for "[c]ommunication with community support about case update" on March 23, 2026 and "[c]ommunication with community support to coordinate release" on March 27, 2026. Dkt. No. 17 at 10. Jiménez Carrión's attorneys argue that due to her detention, they were forced to communicate with her community support rather than with her directly. The Court agrees that communicating with the client (and community support in the alternative) about the case is work that attorneys regularly perform and should not be discounted.[1] However,

[1] *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.1 (1989) ("It has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be

the time billed for organizing and scanning exhibits, formatting a PDF, and arranging an interpreter is time billed for clerical tasks.[2] To account for these clerical tasks, the Court reduces Laidlaw's February 26, 2026, entry for 1.1 hours to .6 hours and strikes his February 26, 2026, entry for 1.7 hours. *See* Dkt. No. 13-1 at 1.

d. Finally, the Government argues that Jiménez Carrión should only receive attorneys' fees related to the filing of her fee petition if the petition is successful. Dkt. No. 17 at 10–11. Because Jiménez Carrión has succeeded on her EAJA fee petition, the Court considers the attorney hours spent on the fee petition itself. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 162–63 (1990).

3.9. Accordingly, the Court finds 29.25 hours compensable at $258.46 per hour for a total of $7,559.96.

---

performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.").

[2] *See, e.g., Evazyan v. Mercedes-Benz USA, LLC*, No. 2:22-cv-06032-JLS-MRW, 2023 WL 11197079, *4 (C.D. Cal. 2023) ("[T]he clerical tasks of organizing and creating Plaintiff's case folder, uploading documents, and sending (as opposed to drafting) the demand letter are not compensable. The Court deems activities like 'scanning' and 'uploading' as the modern-day equivalent of filing, an undisputedly clerical task.").

## 4. CONCLUSION

Accordingly, the fee petition is GRANTED IN PART. Dkt. No. 13. Petitioner is AWARDED $7,559.96 in attorneys' fees. The Government's request for a stay is DENIED.

Dated this 23rd day of October, 2026.

Jamal N. Whitehead
United States District Judge